UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| UNITED STATES OF AMERICA, | * | CIV 17-4002 |
|---|---|---|
| Plaintiff, | * | |
| -vs- | * | MEMORANDUM OPINION AND ORDER |
| JEFFREY A. NELSON, Individually and as Trustee of the J.A. Nelson Irrevocable Trust; BEVERLY A. NELSON; and The MINNEHAHA COUNTY TREASURER'S OFFICE, | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Jeffrey A. Nelson (Nelson) failed to file federal income tax returns and pay his tax assessments for 2004 through 2011. As a result, the Tax Division of the Department of Justice filed suit seeking to reduce to judgment the unpaid federal income tax assessments made against Nelson, to obtain a judicial determination that the "J.A. Nelson Irrevocable Trust" is a nominee and/or alter ego of Nelson, and to foreclose the resulting tax liens.[1] On August 8, 2017, this Court denied Nelson's motion to dismiss the Complaint. (Doc. 12.) None of the defendants answered the Complaint. On September 19, 2017, the Clerk of Court entered default against each defendant pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Doc. 17.) The United States now moves for entry of default judgments under Rule 55(b)(2).

A hearing was held on May 8, 2018, to determine Beverly Nelson's interest, if any, in the real property listed for foreclosure in the Complaint. Attorney Natalie Loebner appeared at the hearing on behalf of the United States. None of the defendants appeared at the hearing. Post-hearing briefs

---

[1] Beverly Nelson, the Minnehaha County Treasurer's Office, and Jeffrey Nelson as Trustee of the J.A. Nelson Irrevocable Trust are named only in Count II, the count to enforce the tax liens, because they may claim an interest in the real property.

were ordered by the Court. (Doc. 36.) In post-hearing submissions, Jeffrey Nelson again challenges the jurisdiction of this Court. (Docs. 38, 39.) Neither Jeffrey nor Beverly Nelson have answered the Court's questions regarding whether Beverly Nelson has an interest in the subject property and, if so, whether that interest precludes the Court from ordering a forced sale of the property. For the following reasons, the motion for default judgments will be granted.[2]

## BACKGROUND

The facts, according to the Complaint, are as follows:

Jeffrey and Beverly Nelson, husband and wife, reside in Dell Rapids, South Dakota. Jeffrey Nelson acquired the property described in the Complaint on September 22, 1978 and has continuously used it as his personal residence. On or about October 25, 1978, Nelson transferred the property by quitclaim deed to the J.A. Nelson Irrevocable Trust (hereafter "Trust") for no consideration. Nelson is the sole trustee for the Trust and the Trust does not have a federal tax identification number or any bank accounts. Nelson has personally paid the Minnehaha County Treasurer real property taxes assessed on the property. On October 3, 1995, Nelson individually granted the Sioux Valley Telephone Company a right of way and easement to the property.

Nelson did not file federal income tax returns for the tax years 2004 through 2011. Beginning in 2010, Nelson was given timely notice of the assessments against him. Notices of federal tax liens were filed against both Jeffrey A. Nelson and the J.A. Nelson Irrevocable Trust. As of November 30, 2016, Jeffrey Nelson owed $152,350.27 in taxes and statutory additions.

On January 9, 2017, the United States filed this action to reduce the federal tax assessments against Nelson to judgment and to foreclose the federal tax liens on Nelson's residence. In response, Nelson filed several documents, including a motion to dismiss. In his motion and other pleadings,

---

[2] Also pending is Nelson's second motion to dismiss for lack of jurisdiction. (Doc. 18.) The Court has already rejected Nelson's argument that he is an American National not subject to the tax laws or this Court's jurisdiction. (Doc. 12.) Nelson's tax-protester arguments deserve no further consideration, and his motion to dismiss will be denied. *See, e.g., United States v. Gerad*, 999 F.2d 1255, 1256 (8th Cir. 1993) (summarily rejecting typical tax-protester arguments).

Nelson recited the typical tax protester arguments and contended that this Court lacked jurisdiction, venue was improper, and the Complaint failed to state a claim. This Court found Nelson's arguments had been rejected in numerous cases and stated that, despite Nelson's belief to the contrary, "they are required to pay income taxes, and their arguments deserve no further consideration." (Doc. 12.) Nelson's motion to dismiss was denied. (*Id.*)

Under Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure, Nelson had 14 days from the denial of his motion to dismiss in which to serve an Answer to the Complaint. Although Nelson filed a response to the Court's Memorandum Opinion and Order denying his motion to dismiss, he did not file an answer to the Complaint. The other defendants also failed to file an Answer to the Complaint. Accordingly, on September 19, 2017, the United States moved for entry of default against each defendant pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. The Clerk of Court entered default as to all defendants on September 19, 2017. (Doc. 17.)

On September 25, 2017, Nelson filed another motion requesting dismissal for lack of jurisdiction. (Doc. 18.) He reasserted the same tax protester arguments already rejected by this Court in its previous ruling, including challenges to the jurisdictional basis for the lawsuit and the relevant statutes authorizing the United States to file suit in this Court. (*Id.*) The United States filed an opposition, contending that Nelson's motion merely invites the Court to revisit its ruling on the earlier motion. (Doc. 19.) Subsequently, Nelson filed some miscellaneous submissions,[3] but he did not file an Answer to the Complaint.

On February 2, 2018, the United States filed the pending motion for default judgment against the defendants. Rather than answer the Complaint, Nelson filed a document challenging the

---

[3] The miscellaneous submissions consist of a copy of an order from the United States Tax Court dated February 19, 2014, dismissing Nelson's petition against the Commissioner of Internal Revenue (doc. 21), a copy of letter from Nelson to Tax Court Judge John O. Colvin dated December 20, 2013, asking for a docket number so he could challenge a tax assessment (doc. 22), and a pleading entitled "Response to United States DOJ Attorney Opposition to Adhere to Federal Tax Laws" in which Nelson reasserts his tax protester arguments (doc. 23).

declaration of the Revenue Officer for the Internal Revenue Service, Breena Effertz.[4] (Doc. 28.) Nelson again argues that he, as an American National, is a non-taxpayer exempt from the revenue laws. (*Id.*). Nelson does not assert any meritorious defenses to the allegations in the Complaint or provide any valid legal reasons to set aside the Clerk's entry of default.[5] Nelson again asserts in his May 22, 2018 filing that neither he nor his wife are not "Statutory U.S. citizens" but instead "were born in the Constitutional Republic (the now 50 states of the Union)." (Doc. 39, p.2.)

## DISCUSSION

### A. Legal Standard

Rule 55 requires two steps before entry of a default judgment: "first, pursuant to FED.R.CIV.P. 55(a), the party seeking a default judgment must have the clerk enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend; second, pursuant to FED.R.CIV.P. 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the rule." *Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673, 683 (N.D.Iowa 1995). In this case, the Clerk of Court has entered default pursuant to Rule 55(a), completing the first step in the process toward default judgment, and the United States has now moved for a default judgment under Rule 55(b)(2).

Upon entry of default by the Clerk of Court, the defaulting defendant "is deemed to have admitted all well pleaded allegations in the complaint." *Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1333 n. 7 (8th Cir. 1988) (quoting *Caribbean Produce Exchange v. Caribe Hydro–Trailer,*

---

[4] The United States submitted the declaration of Officer Effertz in connection with the motion for default judgment to establish the federal tax assessments made against Nelson. (Doc. 27-1.)

[5] Nelson erroneously asserts that the IRS has no authority to complete a Form 1040 on behalf of a delinquent taxpayer. Pursuant to 26 U.S.C. § 6020(b), the IRS is authorized to make a return on behalf of any person who "fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor." 26 U.S.C. § 6020(b)(1). The return must be based on personal knowledge or "from such information as [the IRS] can obtain through testimony or otherwise." *Id.* Such a substitute for return is "prima facie good and sufficient for all legal purposes." 26 U.S.C. § 6020(b)(2).

4

*Inc.*, 65 F.R.D. 46, 48 (D. Puerto Rico 1974)). Thus, in considering a Rule 55 motion, the court accepts the allegations in the Complaint as true and determines "whether the unchallenged facts constitute a legitimate cause of action." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (internal quotation marks omitted).

Although Nelson has filed a number of documents asserting that he is not subject to the revenue laws or the jurisdiction of this Court, he has failed to file an Answer to the Complaint or to otherwise demonstrate he has a meritorious defense to the allegations in the Complaint. Nelson's motions and other filings demonstrate his knowledge of the rules of procedure, yet Nelson took no action after the Court's ruling on his motion to dismiss to prepare an Answer within the 14-day time allowed under Rule 12(a)(4)(A).[6] Accordingly, Nelson is deemed to have admitted the allegations in the Complaint and the United States is entitled to default judgment if it has established that the tax liens are valid and that the Trust holds title to the property as the nominee or alter ego of Nelson.

### B. Reducing IRS Tax Assessments to Judgment

In Count I of the Complaint, the United States seeks a judgment against Nelson for his tax liability. This Court has authority to reduce Nelson's tax assessment to judgment pursuant to 26 U.S.C. § 7402. Section 7402(a) states, in part, that "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction to . . . render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).

The admitted allegations in the Complaint as set forth above establish Nelson's liability for all unpaid tax, interest, and penalty assessments for 2004 through 2011. The total amount of Nelson's liability must be proven by evidence in the record, and the Court may conduct hearings or

---

[6] Pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997) (acknowledging the rule that "pro se litigants are not excused from following court rules").

make referrals when it considers them necessary, such as when an accounting is required or the amount of damages is uncertain. *See Stephenson v. El-Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008) ("The need for a hearing is within the sound discretion of the district court under FED.R.CIV.P. 55(b)(2)(B)."). An evidentiary hearing is unnecessary in this case because, as described below, the documents submitted by the United States establish the amount of Nelson's tax liability. *See Taylor v. City of Ballwin*, 859 F.2d at 1333.

The United States submitted certified IRS Forms 4340 (Certificates of Assessments, Payments, and Other Specified Matters), attached to the Declaration of Revenue Officer Breena Effertz. (Doc. 27-1 and Exhibits A-H.) These documents are entitled to a legal presumption of validity. *See Blodgett v. Comm'r of Internal Rev.*, 394 F.3d 1030, 1035-36 (8th Cir. 2005). The forms show that, beginning on May 31, 2010, the IRS made assessments against Nelson for federal income taxes, interest, and penalties for the tax years 2004 through 2011. The IRS sent Nelson notices of the assessments and demands for payments. The IRS filed with the Minnehaha County Register of Deeds the following Notice of Federal Tax Liens (NFTL):

1. On February 18, 2013, a NFTL against Jeffrey A. Nelson related to tax periods 2004 through 2009.

2. On September 17, 2013, a NFTL against Jeffrey A. Nelson related to tax periods 2010 through 2011.

3. On December 11, 2013, a NFTL against the J.A. Nelson Irrevocable Trust, as the nominee of Jeffrey A. Nelson, related to tax periods 2004 though 2011.

(Doc. 27-1, Exhibits I, J and K.) Nelson failed to pay the amounts assessed against him.

The United States has established that, as of November 20, 2017, Nelson's unpaid tax liability for 2004 through 2011 was $158,179.36, plus statutory interest that has and will continue to accrue.[7] Nelson has failed to rebut the tax assessments' presumption of correctness. Therefore,

---

[7] Statutory interest accrues until full payment. *See* 26 U.S.C. §§ 6601(a).

the United States is entitled to a judgment against Nelson in the amount of $158,179.36, plus statutory interest.

### C. Foreclosure of Tax Liens on Subject Property

In Count II of the Complaint, the United States asserts that, pursuant to 26 U.S.C. §§ 6321 and 6322, federal tax liens attached to the property described in the Complaint. Section 6321 imposes a federal tax lien on "all property and rights to property, whether real or personal," belonging to a delinquent taxpayer. 26 U.S.C. § 6321. Such tax liens arise automatically at the time of assessment and continue until the underlying tax liability is satisfied. *See* 26 U.S.C. § 6322. A tax lien in favor of the United States is exceptionally broad, reaching every interest in property belonging to the taxpayer. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985). Accordingly, "property" and "rights to property" may include "not only the property and rights to property owned by the delinquent taxpayer but also property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer." *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005); *see also Macklin v. United States*, 300 F.3d 814, 818 n. 2 (7th Cir. 2002) ("In the case of a nominee lien, the IRS proceeds against an alter ego or nominee of a delinquent taxpayer for purposes of satisfying the taxpayer's obligations.") (internal quotation marks omitted). Thus, federal tax liens against a taxpayer may be foreclosed against property even when the taxpayer is no longer the nominal property holder, such as when title is held by a nominee or alter ego of the delinquent taxpayer. *See, e.g., United States v. Scherping*, 187 F.3d 796, 801 (8th Cir. 1999) (collecting cases).

The United States argues that the J.A. Nelson Irrevocable Trust holds bare legal title to the property as Nelson's nominee or alter ego. "A nominee is one who holds bare legal title to property for the benefit of another." *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001) (citations omitted). The nominee theory focuses on the taxpayer's relationship to a particular piece of property. *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000).

7

The Supreme Court has held that the IRS may impose nominee tax liens, *see G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977), and has explained that application of the federal tax lien statutes involves questions of both state and federal law. *See Drye v. United States*, 528 U.S. 49, 58 (1999). First, the court must examine state law to determine if the taxpayer has a property interest or rights in the property. *Drye*, 528 U.S. at 58 (holding that courts must "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach"); *see also Nat'l Bank of Commerce*, 472 U.S. at 722 (noting that "state law controls in determining the nature of the legal interest which the taxpayer had in the property" (citations and internal quotations omitted)). If the taxpayer has a property interest under state law, then federal law determines whether that property interest is subject to a federal tax lien. *Drye*, 528 U.S. at 58.

In accordance with the Supreme Court's teachings, before determining what, if any, federal tax consequences attach in this case, the Court will first look to South Dakota law to determine whether the Trust is merely holding title to the property as a nominee. *See Drye*, 528 U.S. at 58; *Loving Saviour Church v. United States*, 728 F.2d 1085, 1086 (8th Cir. 1984) (holding that district court properly applied South Dakota law to decide that church was alter ego of individual taxpayers and thus IRS could levy on property in church's name to satisfy the individuals' tax liability). Neither party cites South Dakota cases providing guidance on the nominee theory, and this Court found none. With the lack of South Dakota law regarding whether an entity holds title to property as a nominee, this Court must predict how the South Dakota Supreme Court would decide the issue.[8]

"Many courts use six factors in evaluating nominee questions: (1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they

---

[8]When faced with an undecided issue of state law, the task of a federal court sitting in diversity is to attempt to predict how the state's highest court would resolve the question. *See Polk v. Ford Motor Co.*, 529 F.2d 259, 264 (8th Cir. 1976). To accomplish this task, federal courts are to consider "any persuasive data that is available, such as compelling inferences or logical implications from other related adjudications and considered pronouncements." *Id.* at 264.

8

failed to record the conveyance; (5) whether the transferor retained possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property." *Spotts*, 429 F.3d at 253 n. 2; *see also Fourth Inv. LP v. United States*, 720 F.3d 1058, 1070 (9th Cir. 2013). "Virtually without exception, courts focus on the totality of the circumstances," and no single factor is dispositive. Rather, the overarching consideration is whether the taxpayer exercised active or substantial control over the property." *Fourth Inv.*, 720 F.3d at 1070 (internal citations and quotations omitted). This Court believes that faced with a similar situation a South Dakota court would likely apply these factors to determine whether Nelson exercises substantial control over the subject property.

Here, the admitted allegations in the United States' Complaint establish the first, third, fifth and sixth factors. No consideration was paid by the nominee; other than in name, there is no clear difference between Nelson and the Trust; Nelson has continued to reside at the residence and has paid all expenses associated with property ownership, including the property taxes; and Nelson is in control of the property, including granting an easement to Sioux Valley Telephone Company in his individual capacity. The fourth factor, failure to record a conveyance, was not established because Nelson did record a quitclaim deed conveying the property to the Trust. (Complaint, Doc. 1 at ¶ 25.) While the second factor has not been clearly established, Nelson's ardent tax protester arguments suggest that he may have transferred the property to the Trust in anticipation of the attachment of tax liens to the property.

For all of these reasons, the Court finds that the J.A. Nelson Irrevocable Trust has served as the nominee title holder for Nelson, who is the true owner of the subject property. *See Scoville*, 250 F.3d at 1202 (holding that plaintiff was taxpayer's nominee where the taxpayer continued to "make use of the farm," "treat it as his own," and had "structured all his dealings so as to protect his assets from taxation").

An alternative basis for holding that the property held in the name of the Trust is subject to a tax lien is that the admitted allegations in the Complaint also establish that the Trust is Nelson's alter ego. *See, e.g., Loving Saviour*, 728 F.2d at 1086 (holding that, under South Dakota law, church

was alter ego of the individual taxpayers based on factors including whether the purported beneficial owner made personal use of the assets nominally held by another, how the assets were insured and managed, the relationship between the parties or entities, and whether consideration was paid for transfers).

Pursuant to 26 U.S.C. § 7403, the United States may enforce it tax liens through the forced sale of the residential property owned by Jeffrey Nelson as long as any non-liable third party is compensated for his or her interest in the property. *See United States v. Rodgers*, 461 U.S. 677, 680 (1983). "[T]he Government's right to seek a forced sale of the entire property in which a delinquent taxpayer had an interest does not arise out of its privileges as an ordinary creditor, but out of the express terms of [the federal tax lien statute]." *Id.* at 697 (citing 26 U.S.C. § 7403).

The United States' power to seek a forced sale, however, is subject to the Court's limited equitable discretion. *Rodgers*, 461 U.S. at 709. While the policy behind the statute favors the "prompt and certain collection of delinquent taxes," the *Rodgers* Court noted that non-liable third parties may be unfairly harmed by foreclosure on real property and that "financial compensation may not always be a completely adequate substitute for a roof over one's head." *Id.* at 704 (citing *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510–13 (1979)). The Supreme Court provided a non-exhaustive list of factors that district courts should consider in determining whether to order a forced sale of property: (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes;" (2) whether the non-liable third party had "a legally recognized expectation that [the] separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors;" (3) the likely prejudice to the non-liable third party "in personal dislocation costs and . . . undercompensation;" and (4) "the relative character and value of the non-liable and liable interests held in the property[.]" *Rodgers*, 461 U.S. at 710–11. Even though these factors should not be used "as a 'mechanical checklist' to the exclusion of common sense and consideration of special circumstances . . . , the limited discretion accorded by § 7403 should be exercised rigorously and

sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Rodgers*, 461 U.S. at 711.

### i. Financial Prejudice to the Government

The United States would be prejudiced by its inability to collect as much from the sale if it is only allowed to sell a partial interest in the home and not the entire property. *See United States v. Bierbrauer*, 936 F.2d 373, 376 (8th Cir. 1991) (finding that since "[t]here is no real prospect that [the tax payer's] interest could be sold separately" when the property was a co-tenancy with a non-liable third party, the first factor weighed in favor of the Government). Thus this factor weighs in favor of authorizing a foreclosure sale of the entire property.

### ii. Beverly Nelson's Expectations

The second *Rodgers* factor is whether Beverly Nelson would expect the residential property to be protected from a foreclosure sale. It is difficult for the Court to evaluate this factor because the Nelsons have not come forth with any evidence of Beverly Nelson's ownership interest in the property or the extent of her knowledge about her husband's tax liabilities. The United States points out that Beverly Nelson signed the Motion to Dismiss, doc. 7, in which the Nelsons argued that they are not subject to federal income tax. This tips the scale against Beverly Nelson because it indicates she has reason to know the government could collect Jeffrey Nelson's unpaid federal income taxes by a forced sale of his property. *See Bierbrauer*, 936 F.2d at 376 (holding that wife acting "with her husband in such a way as to frustrate the government's tax-collection efforts" tilted "the balance of legal expectations" against husband and wife).

Even if Beverly Nelson has an interest in the subject property separate from Jeffrey Nelson pursuant to South Dakota homestead law, the *Rodgers* Court resolved this factor in favor of the government. *Rodgers*, 461 U.S. at 702. The Supreme Court concluded that "[w]hatever property rights attach to a homestead under [state] law are adequately discharged by the payment of compensation, and no further deference to state law is required, either by § 7403 or by the Constitution." *Id.* at 702. This factor weighs in favor of a forced sale.

11

### iii. Prejudice to Beverly Nelson

*Rodgers* directs the Court to consider the extent to which authorizing a forced sale of the residence would prejudice Beverly Nelson in terms of personal dislocation costs and under-compensation if she has an interest in the property. *Rodgers*, 461 U.S. at 711. A certain degree of prejudice is undoubtedly present in every case of a forced sale of property. The United States argues that Beverly Nelson is only prejudiced by normal relocation expenses which courts have held is insufficient to cause this factor to weigh against foreclosure. As the Eighth Circuit stated in *Bierbrauer*, were "the inherent indignity and inequity of being removed from one's home" alone sufficient to "tip the scales" in favor of the non-liable third party, then "the government could never foreclose against a jointly owned residence—a result clearly untenable under § 7403." *Bierbrauer*, 936 F.2d at 376.

Because Beverly Nelson has not supplied the Court with any information regarding personal dislocation costs or the potential for under-compensation, the Court is left with no option but to find that Beverly Nelson will incur only typical relocation expenses and also that she can be sufficiently compensated for her interest in the property through the sale proceeds. Accordingly, this factor weighs in favor of allowing a forced sale.

### iv. Comparative Interests

The final factor in *Rodgers* is the "relative character and value of the non-liable and liable interests held in the property...." *Rodgers*, 461 U.S. at 711. The Supreme Court explained that "if, for example, in the case of real property, the third party has no present possessory interest or fee interest in the property, there may be little reason not to allow the sale; if, on the other hand, the third party not only has a possessory interest or fee interest, but that interest is worth 99% of the value of the property, then there might well be virtually no reason to allow the sale to proceed." *Id.* The United States argues that this factor weighs in favor of a sale because Beverly Nelson's homestead interest, if any, could only be a one-half interest in the property. (Doc. 37 at 9-10.) The Nelsons provided no evidence or argument on this issue.

During the hearing on May 8, 2018, the United States presented evidence of the title records associated with the subject property. (Doc. 35, Ex. 1-3.) The evidence indicates that Beverly Nelson has never held record title to the property, and there is no evidence showing otherwise. However, the United States does not dispute that the property qualifies as a homestead.

The United States asserts that, while South Dakota homestead law provides Beverly Nelson with certain homestead privileges, it does not create a property interest in the residence. The Court agrees. The South Dakota Supreme Court has held that the homestead interest is a privilege for the spouse to live in the home until death; it is not an estate. *See, e.g, Johnson v. Sellers*, 798 N.W.2d 690, 696 n.2 (S.D. 2011) (noting that homestead provision "does not create in the non-owner spouse any estate in the land because the right of homestead is a mere privilege") (citing *Speck v. Anderson*, 310 N.W.2d 339, 344 (S.D. 1982)). The South Dakota Supreme Court has explained:

> The right of homestead is not, under the laws of this state, an estate in land, but is a mere privilege granted by the Legislature in fulfilling the constitutional mandate of section 4, art. 21, and consists of the right of occupancy given to the surviving spouse and minor children and does not pass by succession, showing clearly that when the need for protection for the family ceases, then there is no longer any reason for the homestead. The homestead exemption is therefore temporary and exists only so long as the conditions prevail under which it was allowed by the homestead law.

*In re Clouse's Estate*, 257 N.W. 106, 108 (S.D. 1934). Thus under South Dakota law Beverly Nelson has a possessory interest in the subject property.

There is no showing that Beverly Nelson's homestead interest in the property is greater than Jeffrey Nelson's title interest. Because Beverly Nelson's possessory interest in the property is at most equal to Jeffrey Nelson's ownership interest, this factor does not compel the Court to exercise its limited discretion to prevent a forced sale.

In sum, all of the *Rodgers* factors weigh in favor of foreclosure of the subject property pursuant to 26 U.S.C. § 7403.

### D. Distribution of Proceeds

Federal tax liens, under the supremacy clause, are unaffected by state homestead exemptions. *Rodgers*, 461 U.S. at 678–79 (1983); *First Nat'l Bank of Beresford v. Anderson*, 332 N.W.2d 723, 725 (S.D. 1983) ("[T]he Internal Revenue Service need not recognize homestead exemptions.") (citations omitted). In *Rodgers*, the Supreme Court held the special protections accorded by Texas homestead law do not immunize property held as a homestead by a non-delinquent third party from the reach of [26 U.S.C.] Section 7403. *Id.* at 678. "No such exception appears on the face of Section 7403, and the Supremacy Clause—which provides the underpinnings for the Federal Government's right to sweep aside state-created exemptions in the first place—is as potent in its application to innocent bystanders as in its application to delinquent debtors." *Id.* at 678–79. The Court ultimately concluded that "[w]hatever property rights attach to a homestead under Texas law are adequately discharged by payment of compensation, and no further deference to state law is required, either by Sec. 7403 or by the Constitution." *Id.* at 702.

But the *Rodgers* Court also held that, if the home is sold, the non-delinquent spouse is entitled, as part of the distribution of proceeds required under section 7403, to so much of the proceeds as represents compensation for the loss of the homestead rights. While the Court held that the non-liable spouse would have a right to be compensated for her homestead interest, the Court did not actually do a computation. The opinion contains language regarding how a computation might work, "only for the sake of illustration," using actuarial tables for valuing (by analogy) life estates. *Rodgers*, 461 U.S. at 698-99.

The United States has requested permission to submit further briefing regarding the distribution of the proceeds in the event the Court determines that Beverly Nelson is entitled to compensation from the proceeds of the sale. The Court concludes that Beverly Nelson is entitled to compensation for her homestead interest in the subject property, and the Court will allow the parties to provide argument and authority in support of their positions on the value of Beverly Nelson's homestead interest.

14

## CONCLUSION

The United States has submitted sufficient evidence to demonstrate the federal tax liens at issue are valid and, pursuant to 26 U.S.C. § 7403, and the United States is entitled to enforce the liens against the subject property. The United States may enforce it tax liens through the forced sale of the residential property owned by Jeffrey Nelson as long as Beverly Nelson is compensated for her homestead interest in the property. Accordingly,

IT IS ORDERED:

1. That the Motion to Dismiss of Defendants Jeffrey A. Nelson and Beverly A. Nelson, Doc. 18, is denied.

2. That the Motion for Default Judgment, Doc. 26, is granted.

3. That Judgment is entered on Count I of the Complaint in favor of the United States and against Jeffrey A. Nelson in the amount of $158,179.36, plus statutory interest that has and will continue to accrue from November 20, 2017 regarding Jeffrey A. Nelson's 2004 through 2011 federal income tax liabilities.

4. That Judgment is entered on Count II of the Complaint as set forth below.

    a. The United States has valid and subsisting federal tax liens under 26 U.S.C. §§ 6321 and 6322 that arose at the times assessments were made against Jeffrey A. Nelson for federal income taxes for the 2004 through 2011 tax years.

    b. The federal tax liens identified in paragraph 4(a) above attach to all property and rights to property held by Jeffrey A. Nelson, including the real property (the "Property") titled in the name of the J.A. Nelson Irrevocable Trust located in Dell Rapids, South Dakota with the following legal description:

> Overaag Tract 5 in the Southwest Quarter (SW1/4) of Section 8, Township 104 North, Range 49 West of the Fifth Principal Meridian, Minnehaha County, South Dakota, According to the recorded plat thereof.

    c. The J.A. Nelson Irrevocable Trust is the nominee and/or alter ego of Jeffrey A. Nelson with respect to the Property identified in paragraph 4(b) above.

    d. The federal tax liens identified in paragraph 4(a) above are enforced against the Property identified in paragraph 4(b) above.

e. The Property identified in paragraph 4(b) will not be sold until after the Court determines the value of Beverly Nelson's homestead interest in the Property.

5. The United States and Beverly Nelson shall submit briefing regarding the valuation of Beverly Nelson's interest in the Property, and a proposed Order of Foreclosure and Judicial Sale.

a. The United States' opening brief shall be filed on or before June 15, 2018.

b. Beverly Nelson's brief shall be filed on or before July 9, 2018.

c. The United States shall file a reply brief on or before July 19, 2018.

Dated this 25th day of May, 2018.

BY THE COURT:

*[signature]*
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

BY: *[signature]*
(SEAL)     DEPUTY